UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOYCE E. FEAGANS, Plaintiff, | ) | |
| vs. | ) | No. 2:15-cv-00222-JMS-DKL |
| J. DIRK CARNAHAN Individually and in his official capacity as Knox County Prosecutor, Defendant. | ) | |

**ORDER**

This case involves a series of disputes arising in the employment and wage context. Plaintiff Joyce Feagans served as the Title IV-D child support administrator of the Knox County prosecutor's office from 1988 through 2015. After suffering an accidental fall causing severe injuries, Ms. Feagans exercised her right to take leave under the Family and Medical Leave Act ("FMLA"). When she returned from leave, newly-elected prosecutor Dirk Carnahan reassigned Ms. Feagans to the position of office receptionist, and ultimately terminated Ms. Feagans' employment. Ms. Feagans alleges that these constituted adverse employment actions, made in violation of her rights under the FMLA. She also alleges that the adverse actions were made on the basis of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1983, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. She also alleges that Mr. Carnahan failed to pay her for a portion of her hours worked, in violation of the Indiana Wage Claims Act ("IWCA").

Presently pending before the Court are cross-motions for summary judgment. Ms. Feagans has moved for summary judgment on her FMLA interference claim and for partial summary

judgment (liability only) on her IWCA claim. Mr. Carnahan has cross-moved for summary judgment on all claims. As discussed below, the Court DENIES both parties' motions for summary judgment on the FMLA, ADEA, and Section 1983 claims, GRANTS Ms. Feagans' motion for partial summary judgment as to IWCA liability, and DENIES summary judgment on all other claims.

## I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).

Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment, because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

## II.
## STATEMENT OF FACTS

### A. Employment History

Ms. Feagans began her employment with the Knox County prosecutor's office in 1988 as the Title IV-D child support administrator and served in that position under five elected prosecutors. [Filing No. 52-7 at 1; Filing No. 52-7 at 10; Filing No. 52-7 at 12.] She was still employed as administrator on December 30, 2014, when she suffered an accidental fall. [Filing No. 52-7 at 5.] As a result of that accident, Ms. Feagans sustained serious injuries, including a traumatic head injury and multiple skull fractures. [Filing No. 52-3 at 2.] She applied for and was granted leave under the FMLA and was on leave from December 30, 2014 until March 16, 2015, when she was medically released to return to work. [Filing No. 52-8 at 1; Filing No. 52-3 at 3.] Ms. Feagans was 64 years old at the time that the relevant events took place. [Filing No. 59-7 at 15.] She testified that she was the oldest non-attorney employee of the prosecutor's office. [Filing No. 57-2 at 23.]

Mr. Carnahan was elected prosecutor of Knox County in November of 2014. [Filing No. 52-9 at 2-3.] That month, before taking office, and before Ms. Feagans went on leave, Mr. Carnahan held a meeting with the prosecutor's office staff. [Filing No. 57-3 at 48; Filing No. 57-2 at 22.] Ms. Feagans attended that meeting, and she asserts that Mr. Carnahan asked her "how long [she] planned on working." [Filing No. 57-2 at 27.] She responded that she had "no reason to retire." [Filing No. 57-2 at 27.] Mr. Carnahan then asked if she "was going to retire," to which she responded that she was not. [Filing No. 57-2 at 27.] According to Ms. Feagans, Mr. Carnahan did not ask any of the other attendees about their retirement plans. [Filing No. 57-2 at 23.] Mr. Carnahan denies having asked Ms. Feagans about retirement, how long she intended to work, or about her age. [Filing No. 57-3 at 50.]

Mr. Carnahan took office in January of 2015 and officially became Ms. Feagans' supervisor. [Filing No. 57-2 at 10.] At all relevant times, Mr. Carnahan had the authority to hire, fire, assign, and reassign duties of employees within the prosecutor's office. [Filing No. 57-3 at 23-24.] While Ms. Feagans was on leave, Mr. Carnahan assigned Kaylee Steele, who had previously worked as the child support paralegal, to serve in the role of child support administrator. [Filing No. 57-3 at 90-91.] Samanetha Thomas, who was the office's receptionist, began assisting in some of the child support paralegal responsibilities. [Filing No. 57-3 at 99-100.] According to Mr. Carnahan, he did not intend for Ms. Steele's reassignment of duties to be permanent. [Filing No. 57-3 at 130.]

During Ms. Feagans' absence, Mr. Carnahan implemented several changes to the manner in which child support cases were managed and processed. [Filing No. 57-3 at 72; Filing No. 57-2 at 24.] As those changes were implemented, and as Ms. Steele and Ms. Thomas continued processing cases previously assigned to Ms. Feagans, they reported that they had discovered numerous errors made by Ms. Feagans in calculating child support obligations. [Filing No. 57-3 at 124-26; Filing No. 57-6.] They reported those errors in emails to Mr. Carnahan and Deputy Prosecutor Monica Gilmore. [Filing No. 57-6.] According to Ms. Feagans, IV-D staff routinely caught mistakes made by one another. [Filing No. 57-2 at 34.] When mistakes were uncovered, they would correct them and move on. [Filing No. 57-2 at 34.]

On February 24, 2015, Ms. Gilmore sent an email to Mr. Carnahan stating, in relevant part:

> I've heard there is a possibility that Joyce will be released this week to return to work. We can only have one CSA in the IV-D office. Joyce was the CSA before her medical leave, and we made Kaylee the CSA in her absence. My preference is to keep Kaylee as CSA.…

[Filing No. 52-5.] Mr. Carnahan responded, "I agree with you. Still not sure if/when or in what position Joyce may return. I want to keep the progress you have started going forward." [Filing

No. 52-5.] Also on February 24, Ms. Thomas sent an email to Mr. Carnahan stating, in relevant part:

> Rumor has it that Joyce is coming back in the next week or two as long as the doctor says it is ok. If this is true I was just wanting to know if I was still moving to Child Support and if I needed to continue training or not? Please let me know when u have time.…

[Filing No. 59-1.] Mr. Carnahan responded, "Continue training. When there is any news about Joyce I will let you know immediately." [Filing No. 59-1.]

After being cleared by her physician to resume work, Ms. Feagans returned to the prosecutor's office on March 16, 2015. [Filing No. 57-2 at 13]. She arrived at around 7 a.m. and proceeded to her office. [Filing No. 57-2 at 19-21.] She found stacks of files covering her desk, floor, and chairs, and she began sorting the files. [Filing No. 57-2 at 16-17.] At some point during the day, Ms. Feagans was made aware of the changes to the office's case management protocol. [Filing No. 57-3 at 72.]

From here, the parties' accounts of the day's events diverge. According to Mr. Carnahan, before he arrived in the office, he received a phone call reporting that Ms. Feagans was cursing at coworkers, yelling, and throwing objects in her office. [Filing No. 57-3 at 67-68.] Ms. Feagans caused the Title IV-D regional director to storm out, in tears, stating that she would never return as long as Ms. Feagans was in the office. [Filing No. 57-3 at 67.] Ms. Steele was also crying and "ready to quit." [Filing No. 57-3 at 71.] Ms. Feagans also refused to work or to implement the new case management protocol. [Filing No. 57-3 at 67; Filing No. 57-3 at 71.] After arriving at the office, Mr. Carnahan spoke to Ms. Feagans, who stated that she had not engaged in the behavior reported, and that "everyone was making that up." [Filing No. 57-3 at 71.] According to Mr. Carnahan, Ms. Feagans indicated that she would not implement the case management changes, but that she would "try to get along better or something to that effect." [Filing No. 57-3 at 71.]

Ms. Feagans disputes Mr. Carnahan's account. While she acknowledges that she was not happy with the case management changes that had been made, she asserts that she did not raise her voice when speaking about them. [Filing No. 57-2 at 25; Filing No. 57-2 at 51.] She also denies cursing at Ms. Steele, or making her cry. [Filing No. 57-2 at 52-54.] Ms. Feagans asserts that she is not aware of having upset anyone at the prosecutor's office and would be surprised to learn that someone said that she had. [Filing No. 57-2 at 54.] She also states that she was not aware of having had any conflicts with outside state employees with whom she interacted. [Filing No. 57-2 at 36.]

The parties disagree regarding the timing, but at some point during that afternoon, Mr. Carnahan informed Ms. Feagans that she was being removed from her position as the Title IV-D child support administrator and was being reassigned to a position as the office's receptionist. [Filing No. 57-3 at 66-67; Filing No. 57-2 at 23-24.] According to Mr. Carnahan, he informed Ms. Feagans that "her attitude was not acceptable, that it was not working and that [they] were going to attempt to move her to a different position." [Filing No. 57-3 at 67-68.] By Ms. Feagans' account, Mr. Carnahan said, "he knew [she] was going to be retiring, and that [she] had permanent brain damage, and he was going to move [her] into the receptionist position starting the next day." [Filing No. 57-2 at 21.] Ms. Steele was assigned to the child support administrator position. [Filing No. 59-7 at 19.] Ms. Steele is estimated to be approximately 25 to 40 years old. [Filing No. 59-6 at 4.]

As the Title IV-D administrator, Ms. Feagans sat in a private office with a door. [Filing No. 57-3 at 13.] Her responsibilities included the general preparation of cases, preparation of motions, proposed orders, and affidavits, and the duty to testify in court. [Filing No. 57-2 at 24.] The administrator also had the authority to sign official documents on behalf of the prosecutor's

office, and with the approval of an attorney, could negotiate settlements of child support enforcement disputes. [Filing No. 57-3 at 80.] Ms. Feagans also served as the primary point of contact with state Title IV-D officials. [Filing No. 57-3 at 24.] As the office receptionist, her duties included answering phones, greeting visitors, and preparing filings in juvenile cases. [Filing No. 57-3 at 81-83.] She sat at a desk in the reception area, separated from the room by a glass partition. [Filing No. 57-3 at 81.]

Ms. Feagans worked as the office receptionist from March 17, 2015 through May 1, 2015. [Filing No. 57-2 at 23-24; Filing No. 57-2 at 33.] During that time, she typically arrived at 7 a.m., an hour before the office opened, in order to clean the reception area and kitchen and to make coffee. [Filing No. 57-2 at 25.] She completed and submitted time cards reflecting her hours in the office—typically 7 a.m. through 4 p.m., with a one-hour lunch break. [Filing No. 52-2.] Mr. Carnahan testified that the non-attorney staff members were only authorized to work seven hours per day, not eight as Ms. Feagans did. [Filing No. 57-3 at 128.]

The parties dispute the facts surrounding Ms. Feagans' tenure as receptionist. According to Mr. Carnahan, Ms. Feagans could not avoid conflict with her coworkers and was convinced that they were seeking to upset her. [Filing No. 57-2 at 30.] Mr. Carnahan received reports of at least one instance in which Ms. Feagans lied to a caller or office visitor, saying that the child support staff were gone for the day, when they were actually in their offices. [Filing No. 57-3 at 117.] She then failed to relay the individual's message to the appropriate staff. [Filing No. 57-3 at 117.] Mr. Carnahan believed that Ms. Feagans on one occasion turned off the central office phone in order to take a personal call on her cell phone. [Filing No. 57-3 at 117.] Mr. Carnahan also asserts that Ms. Feagans ordered office supplies without authorization. [Filing No. 57-3 at 134.]

In an attempt to smooth over the conflict between Ms. Feagans and her coworkers, and as a "last-ditch effort to save her job," Mr. Carnahan instructed Ms. Feagans to go out for lunch with several coworkers to talk through their issues. [Filing No. 57-3 at 116.] Those coworkers reported to Mr. Carnahan that Ms. Feagans became angry during the lunch and pointed and yelled inside the restaurant. [Filing No. 57-3 at 116.] Mr. Carnahan states that Ms. Feagans was repeatedly warned about her behavior, but he knew of no written or disciplinary record that had been kept reflecting these behavioral issues. [Filing No. 57-3 at 69-70.]

Ms. Feagans denies several of the specific incidents described by Mr. Carnahan. She generally asserts that Ms. Steele had an incentive to blame Ms. Feagans for any conflict or tension in the workplace, because Ms. Steele wanted to remain the child support administrator—the position that Ms. Feagans previously held. [Filing No. 57-2 at 67.] Ms. Feagans also disputes Mr. Carnahan's account of the lunch attended by her and several coworkers. [Filing No. 57-2 at 43-44.] She asserts that her coworkers "instantly…jumped all over [her], accusing [her] of different things…in the office." [Filing No. 57-2 at 43-44.] Ms. Feagans states that she raised her voice during the conversation, but it was her coworkers who yelled inside the restaurant. [Filing No. 57-2 at 71-72.] She is also unaware of any behavioral issues being reported to Mr. Carnahan. [Filing No. 57-2 at 51.] Ms. Feagans testified that she had never been cited for any disciplinary issues or write-ups during her career at the prosecutor's office. [Filing No. 57-2 at 36.]

On May 1, 2015, Mr. Carnahan states that he called Ms. Feagans into his office and stated, "it just hasn't worked out. We've tried. It hasn't worked out. This is your last day." [Filing No. 57-3 at 118.] Mr. Carnahan attests that his decision to terminate Ms. Feagans' employment was based on the performance and behavioral issues that he had witnessed and that had been reported to him. [Filing No. 57-3 at 117-18.] Ms. Feagans disputes Mr. Carnahan's factual account of her

termination. According to her, Mr. Carnahan told her he was aware that she had permanent brain damage and that she was "getting meaner by the day." [Filing No. 57-2 at 46.] He then suggested that Ms. Feagans retire. [Filing No. 57-2 at 46.] When she refused to retire, he told her to clean out her desk. [Filing No. 57-2 at 46.] After doing so, she was escorted out of the building. [Filing No. 57-2 at 46.]

On May 20, 2015, Mr. Carnahan sent a letter to the Knox County Council describing the circumstances of Ms. Feagans' departure. [Filing No. 59-3.] In relevant part, Mr. Carnahan stated:

> It was apparent at that time that [Ms. Feagans] would be unable to continue her employment in this office beyond that day. Ms. Feagans decided that she would retire. I later received a phone call from her indicating that she had decided not to retire or quit. Later, I received a text message telling me to disregard the phone call and that she would be retiring. A few hours later I received another text message that told me to disregard the previous text message and that she would not be retiring. It is my belief that Ms. Feagans retired. However, if she did not retire then her employment here would have been terminated. She has not returned or attempted to return to work here.

[Filing No. 59-3.]

**B. Compensation**

During her time as receptionist, Ms. Feagans completed and submitted weekly time sheets indicating her hours worked. [Filing No. 52-2.] Her pay stubs during that period consistently reflected payment for fewer hours than she indicated on her time sheets. [Filing No. 52-2; Filing No. 52-1.] Ms. Feagans typically submitted time sheets documenting 36-40 hours of work per week, while her pay stubs reflect payment for only 35 hours of work per week. [Filing No. 52-2; Filing No. 52-1.] Mr. Carnahan asserts that Ms. Feagans was only authorized to work seven hours per day, or 35 hours per week. [Filing No. 57-3 at 128-29.]

## III.
## Cross-Motions for Summary Judgment

Ms. Feagans raises the following claims against Mr. Carnahan[1]:

- Violations of 29 U.S.C. § 621 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), alleging that Mr. Carnahan demoted her and then terminated her employment on the basis of age;
- Violations of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, alleging that Mr. Carnahan demoted her and then terminated her employment on the basis of age;
- Violations of 29 U.S.C. § 2615(a), the Family and Medical Leave Act ("FMLA"), insofar as Mr. Carnahan interfered with Ms. Feagans' exercise of her FMLA rights, and then retaliated against her for having done so; and
- Violations of Indiana Code § 22-2-9-1 *et seq.*, the Indiana Wage Claims Act ("IWCA"), alleging that Mr. Carnahan has failed to pay Ms. Feagans the wages owed following her termination.

Ms. Feagans has moved for summary judgment on the FMLA interference claim and for partial summary judgment as to liability on the IWCA claim. [Filing No. 51.] Mr. Carnahan has cross-moved for summary judgment on all claims. [Filing No. 56.]

### A. Age Discrimination Claims

Ms. Feagans raises several claims alleging that she suffered discrimination based on her age. She claims that Mr. Carnahan violated the ADEA when he reassigned Ms. Feagans to the

[1] Ms. Feagans has sued Mr. Carnahan "individually and in his official capacity."[Dkt. 19]. Neither party presents any argument distinguishing between the two, and the Court will not address issues not raised by the parties, particularly in ruling on summary judgment.

position of receptionist, and when he terminated her employment. [Filing No. 45 at 2.] She also claims that Mr. Carnahan violated 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution when he reassigned Ms. Feagans to the position of receptionist, and when he terminated her employment. [Filing No. 45 at 2.]

Mr. Carnahan moves for summary judgment on all claims.

*1. Violation of the ADEA: Reassignment and Termination*

The ADEA makes it unlawful for an employer to take an adverse employment action against an individual "because of such individual's age." 29 U.S.C. § 623(a)(1); *see Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014). ADEA protections extend to individuals who are 40 years of age and older. 29 U.S.C. § 631(a).

In order to prevail on an age discrimination claim at the summary judgment stage, the plaintiff must show that the evidence would permit a reasonable factfinder to conclude that the plaintiff's age caused the adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763 (7th Cir. 2016). As the Seventh Circuit recently instructed in *Ortiz*:

> Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'

*Id.* at 763. The sole question is whether a reasonable juror could conclude that Ms. Feagans would not have suffered an adverse employment action if she were less than forty years old and everything else remained the same. *See Achor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736-37 (7th Cir. 1994). The Court reviews the record in the light most favorable to the non-moving party, Ms. Feagans, and draws all reasonable inferences in her favor. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

*a. Reassignment to Receptionist Position*

Ms. Feagans contends that her reassignment to the position of office receptionist was a demotion due to her age, constituting an adverse employment action in violation of the ADEA. Mr. Carnahan responds that Ms. Feagans' reassignment did not constitute an adverse employment action, but that even if it did, Ms. Feagans has not identified sufficient evidence to establish that such an action was based upon her age.

i. *Adverse Employment Action*

A demotion, even when not accompanied by a decrease in pay or benefits, can constitute an adverse employment action. *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465-66 (7th Cir. 2002) (concluding "materially adverse actions may include … a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (citing *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999)).

The job duties of the child support administrator, Ms. Feagans' prior position, included case management, serving as the point of contact for state child support officials, and testifying in court. [Filing No. 57-2 at 6; Filing No. 57-2 at 24.] The administrator also had the authority to sign official documents on behalf of the prosecutor's office, and with the approval of an attorney, could negotiate settlements of child support enforcement disputes. [Filing No. 57-3 at 80.] The receptionist position included none of these duties, and entailed largely answering the phone and greeting visitors. [Filing No. 57-3 at 81-83.]

From the evidence presented, a factfinder could conclude that the change in Ms. Feagans' duties represented a significant diminution in her material responsibilities, and therefore constituted a demotion. A juror could conclude that duties such as testifying in court and

negotiating child support settlements entailed a greater degree of responsibility, skill, and engagement than answering the phone and greeting visitors. Because a factfinder could conclude that Ms. Feagans suffered an adverse employment action, summary judgment for Mr. Carnahan on this basis is inappropriate.

*ii. Demotion Based on Age*

Mr. Carnahan argues that, assuming Ms. Feagans suffered an adverse employment action, she has not pointed to sufficient evidence to establish that age motivated that action.

Ms. Feagans proceeds under the so-called "direct method" of proving discrimination, under which she may offer direct or circumstantial evidence to establish her claim. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Regarding the types of evidence a plaintiff may choose to present, the Seventh Circuit explained:

> Three types of circumstantial evidence of intentional discrimination can be distinguished. The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. This is the most common type of evidence in an intentional discrimination case, now that employers have taught their supervisory employees not to put discriminatory beliefs or attitudes into words oral or written.

*Troupe*, 20 F.3d at 736 (citations omitted).

Ms. Feagans points to three statements made by Mr. Carnahan as supporting her claim that she was demoted because of her age:

(1) The exchange between Ms. Feagans and Mr. Carnahan at the November 2014 meeting, in which Mr. Carnahan asked Ms. Feagans how long she planned on working and whether she was going to retire, [Filing No. 57-2 at 27];

(2) Mr. Carnahan's statement when reassigning Ms. Feagans to the receptionist position that he knew Ms. Feagans "was going to be retiring," [Filing No. 57-2 at 21]; and

(3) Mr. Carnahan's May 1 suggestion to Ms. Feagans that she retire, prior to her being terminated, [Filing No. 57-2 at 46].

Ms. Feagans also relies on Mr. Carnahan's May 20, 2015 letter to the Knox County Council, in which he describes Ms. Feagans as having "retired" from the prosecutor's office. [Filing No. 59-3.] In his deposition, however, Mr. Carnahan described Ms. Feagans as having been terminated. [Filing No. 57-3 at 21.] And finally, Ms. Feagans presents evidence that following her reassignment to receptionist, she was replaced by a younger employee, Ms. Steele. [Filing No. 59-7 at 19; Filing No. 59-6 at 4.]

Taking the evidence as a whole and in the light most favorable to Ms. Feagans, the Court concludes that a reasonable juror could find that Ms. Feagans was demoted because of her age. While Mr. Carnahan denies making the statements attributed to him, a factfinder could credit Ms. Feagans' account of events. In addition, a factfinder could find Mr. Carnahan's differing accounts of Ms. Feagans' employment status—in one instance as having retired and in another as having been terminated—suspicious in light of his prior comments regarding Ms. Feagans' retirement plans.

While the Court notes that the boundaries of retirement and age are not necessarily the same, a juror could find that, given Ms. Feagans' age—62 at the time of the events in question—references to retirement were motived by age in this case. *See Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir. 1997) (finding that in some circumstances "repeated references to retirement may permit a jury to infer discrimination, as the comments may reflect the employer's intention to rid itself of older workers by subtly pressuring them into retiring"). Ms. Feagans testified that Mr. Carnahan did not ask any other employees (all younger) about their plans for retirement. [Filing No. 57-2 at 23.] The timing of Ms. Feagans' reassignment—on her first day reporting to Mr.

Carnahan—might also raise an inference of discrimination. And a factfinder might assign weight to the fact that a younger employee replaced Ms. Feagans following her reassignment. Of course, a factfinder might also credit the testimony of Mr. Carnahan and Ms. Feagans' co-workers, concluding that her behavior, and not her age, motivated the position change.

*b. Termination*

Ms. Feagans alleges that Mr. Carnahan terminated her employment based on her age, in violation of the ADEA. Mr. Carnahan moves for summary judgment, asserting that Ms. Feagans has not identified sufficient evidence to support her claim.

Ms. Feagans' evidence largely overlaps with the evidence put forward in support of her ADEA claim regarding reassignment. She points to Mr. Carnahan's repeated statements regarding her plans to retire, as well as Mr. Carnahan's potentially conflicting accounts of Ms. Feagans' departure from the prosecutor's office. For the reasons described above, issues of material fact exist as to the motivations for Ms. Feagans' termination, so summary judgment is inappropriate.

For these reasons, summary judgment is denied as to both of the ADEA claims.

*2. Violation of 42 U.S.C. § 1983 and the Equal Protection Clause*

Ms. Feagans alleges that Mr. Carnahan's decisions to reassign her to the receptionist position and to terminate her employment were made on the basis of age in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment. *See Levin v. Madigan*, 692 F.3d 607, 617 (7th Cir. 2012) (holding that the ADEA does not preclude a § 1983 equal protection claim based on age).

Mr. Carnahan, citing to several out-of-circuit cases, asserts that the proper framework for evaluating an age discrimination claim under Section 1983 and the Equal Protection Clause is the

familiar *McDonnell Douglas* test. [Filing No. 58 at 27.] Ms. Feagans does not dispute this assertion, so for the purposes of summary judgment, the Court will apply that standard.[2]

Under *McDonnell Douglas,* Ms. Feagans must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[3] *Baron v. City of Highland Park,* 195 F.3d 333, 339 (7th Cir. 1999). If she does so, a presumption of discrimination arises, and the burden shifts to Mr. Carnahan to provide evidence of "a legitimate, non-discriminatory reason" for Ms. Carnahan's adverse employment action. *Id.* The burden then shifts back to Ms. Feagans to prove by a preponderance of the evidence that the "legitimate reasons offered by the defendant were not [his] true reasons, but were a pretext for discrimination." *Id.*

Regarding both Ms. Feagans' reassignment to the receptionist position and her termination, for the reasons described above in Part III.A.1, Ms. Feagans has established a *prima facie* case of discrimination. Mr. Carnahan asserts that he had a legitimate business reason both for reassigning Ms. Feagans and for terminating her employment—Ms. Feagans' "inappropriate behavior." [Filing No. 58 at 28.] Ms. Feagans asserts that Mr. Carnahan's stated reason is pretextual, and points to several pieces of evidence in support. First, Mr. Carnahan's statement that he never

[2] However, the Court notes that both Supreme Court precedent and precedent within this Circuit suggest that the rational basis standard of review should apply. *See Massachusetts Bd. Of Retirement v. Mungia,* 427 U.S. 307, 311 (1976) (holding that age is not a suspect classification and applying rational basis review); *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 83 (2000) (holding "[s]tates may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest"); *Levin,* 692 F.3d at 619 (noting that "[b]ecause age is not a suspect classification, an equal protection claim of age discrimination in employment is subject only to rational basis review, in which the age classification must be rationally related to a legitimate state interest").

[3] If rational basis review were to apply, Ms. Feagans would need to prove that Mr. Carnahan: (1) intentionally treated her differently from others similarly situated; (2) intentionally treated her differently because of her membership in the class to which she belonged; and (3) the difference in treatment was not rationally related to a legitimate state interest. *Smith v. City of Chicago,* 457 F.3d 643, 650-51 (7th Cir. 2006) (citing *Schroeder v. Hamilton Sch. Dist.,* 282 F.3d 946, 950-51 (7th Cir. 2002)).

intended to permanently reassign Ms. Steele to the administrator role facially conflict with Mr. Carnahan's email exchanges while Ms. Feagans was on leave. [Filing No. 52-5; Filing No. 59-1; Filing No. 57-3 at 130.] Second, Mr. Carnahan has provided conflicting accounts of the circumstances under which Ms. Feagans ended her employment—*i.e.*, Mr. Carnahan's testimony that Ms. Feagans was terminated, and his statement to the Knox County Council that Ms. Feagans retired. [Filing No. 57-2 at 33; Filing No. 59-3.] Conflicting statements regarding the actual adverse employment action support an inference of pretext.

Summary judgment is denied on both of the Section 1983 claims.

**B. FMLA Claims**

Ms. Feagans raises two claims against Mr. Carnahan alleging violations of the FMLA: (1) that Mr. Carnahan interfered with Ms. Feagans' exercise of her FMLA rights by failing to restore her to the position she held before taking leave; and (2) that Mr. Carnahan retaliated against Ms. Feagans for having exercised her FMLA rights when he reassigned her to the position of receptionist. *See* 29 U.S.C. § 2615(a). Ms. Feagans moves for summary judgment only on the interference claim. Mr. Carnahan cross-moves for summary judgment on both FMLA claims.

*1. Interference Claim: Failure to Restore Ms. Feagans to Prior or Equivalent Position*

Ms. Feagans argues that she was denied the right to be restored to her position as child support administrator, or an equivalent position, when she returned from FMLA leave. [Filing No. 71 at 17-18.] Pointing to the emails exchanged between Mr. Carnahan, Ms. Thomas, and Ms. Gilmore in February of 2015, Ms. Feagans contends that Mr. Carnahan had already permanently reassigned the administrator position to Ms. Steele nearly a month before Ms. Feagans returned from leave. [Filing No. 71 at 20-22.] Ms. Feagans argues that Mr. Carnahan never intended to allow her to continue as the administrator, and that any "reinstatement" was in fact illusory. [Filing

No. 71 at 22-23.] Ms. Feagans also contends that her reassignment to the receptionist position does not constitute an "equivalent" position under the FMLA. [Filing No. 71 at 19-20.]

Mr. Carnahan offers three arguments in response. First, he contends that Ms. Feagans was not denied a benefit to which she was entitled, because she was fully restored to her position. [Filing No. 58 at 30.] He argues that he did not permanently reassign the administrator position to Ms. Steele prior to Ms. Feagans' return. [Filing No. 58 at 30-32.] According to Mr. Carnahan, the email exchanges relied upon by Ms. Feagans merely represent the temporary reassignment of duties while Ms. Feagans was on leave. [Filing No. 58 at 30-32.] Mr. Carnahan contends that after being restored, Ms. Feagans was removed from her prior position when she failed or refused to complete her job responsibilities. [Filing No. 58 at 34-38.] Second, Mr. Carnahan asserts that even if Ms. Feagans' reinstatement to the administrator position was illusory, Ms. Feagans had no right to reinstatement. [Filing No. 58 at 35-37.] According to Mr. Carnahan, Ms. Feagans was not meeting her employer's legitimate expectations prior to taking leave, so she was not entitled to be restored to her prior position. [Filing No. 58 at 35-37.] And finally, Mr. Carnahan contends that Ms. Feagans was ultimately restored to an equivalent position—that of receptionist—and thus has not been denied a benefit to which she was entitled. [Filing No. 58 at 37-40.]

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA rights. 29 U.S.C. § 2615(a)(1). Upon her return to work, an employee has the right to be restored to the same or an equivalent position to the one she had before taking qualifying leave. 29 U.S.C. § 2614(a)(1)-(2). But an employee's right to reinstatement is not absolute. An employer may lawfully refuse to restore an employee to her former position when restoration "would confer a right, benefit, or position of employment that the employee would not have been entitled to if the employee had never left the workplace."

*Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010) (citation and internal quotations omitted). Phrased differently, "an employee is not entitled to return to her former position if she would have been fired regardless of whether she took the leave." *Id.* (citing *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 978 (7th Cir. 2008)).

In order to establish an interference claim, an employee must show that: (1) she was eligible for FMLA protection; (2) her employer was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *See Goelzer*, 604 F.3d at 993. Here, the first four elements are not in dispute. Therefore, the only issue is whether Mr. Carnahan denied Ms. Feagans FMLA benefits to which she was entitled.

With respect to Ms. Feagans' motion for summary judgment, the question is whether a jury could find that Mr. Carnahan did reinstate Ms. Feagans to the same or an equivalent position. For Mr. Carnahan's motion, the question is whether a jury could find that Mr. Carnahan failed to reinstate Ms. Feagans to the same or an equivalent position, and whether he did so because she exercised her right to take FMLA leave. *See Id.* (citing *Liberty Lobby, Inc.*, 477 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial")).

*a. Reinstatement to Administrator Position*

Ms. Feagans presented evidence that while she was exercising her FMLA leave, Mr. Carnahan was communicating with staff from the prosecutor's office about what position Ms. Feagans would hold upon her return. When Ms. Gilmore wrote, "Joyce was the CSA before her medical leave, and we made Kaylee the CSA in her absence. My preference is to keep Kaylee as CSA," Mr. Carnahan responded, "I agree with you. Still not sure if/when or in what position Joyce

may return. I want to keep the progress you have started going forward." [Filing No. 52-5.] And when Ms. Thomas asked, "I was just wanting to know if I was still moving to Child Support and if I needed to continue training or not," Mr. Carnahan responded, "[c]ontinue training. When there is any news about Joyce I will let you know immediately." [Filing No. 59-1.] A jury could conclude that these communications evidence a plan by Mr. Carnahan to deny Ms. Feagans reinstatement upon her return. A jury could also conclude that the timing of Ms. Feagans' reassignment to the position of receptionist—within hours of returning to the office from FMLA leave—was suspicious, in light of the above-cited communications.

Mr. Carnahan presented evidence that he intended to, and did reinstate Ms. Feagans to her prior administrator position when she returned from FMLA leave. Ms. Feagans returned to her office and began working on her caseload. [Filing No. 57-2 at 16-17.] He testified that he did not intend to permanently assign Ms. Steele to the administrator position prior to Ms. Feagans' return. [Filing No. 57-3 at 130.] Mr. Carnahan also presented evidence that Ms. Feagans engaged in disruptive behavior—swearing, yelling, and throwing things—and refused to perform her work responsibilities on the day that she returned to the office. [Filing No. 57-3 at 67-68; Filing No. 57-3 at 71.] Mr. Carnahan also presented evidence of Ms. Feagans' inappropriate treatment of coworkers. [Filing No. 57-3 at 67; Filing No. 57-3 at 71.] A jury also could credit that evidence and conclude that Ms. Feagans was indeed reinstated to her prior position, but was removed from it for performance or behavioral reasons.

Because genuine disputes of material fact exist, summary judgment for either party on the reinstatement to the administrator position inappropriate.[4]

[4] Both parties appear to wholly disregard the summary judgment standard that affords all reasonable inferences to the non-movant, instead asking the Court to credit each party's version. Counsel are cautioned that the Court applies the standard faithfully, and such practice is ineffective

*b. Reinstatement to equivalent position*

Mr. Carnahan also argues that he should be granted summary judgment, because Ms. Feagans was reinstated to an equivalent position when she became the office receptionist. "The test for equivalence is strict. Jobs are only 'equivalent' within the meaning of the FMLA if they entail equivalent employment benefits, pay, and other terms and conditions of employment." *Breneisen*, 512 F.3d at 977 (citing 29 U.S.C. § 2614(a)(1)(B)) (internal quotations omitted). The jobs, for example, "must involve the same or substantially similar duties and responsibilities." 29 C.F.R. § 825.215(a). Ms. Feagans produced more than sufficient evidence to survive summary judgment on this issue. The administrator position involved duties such as case management, serving as the point of contact for state child support officials, and testifying in court. [Filing No. 57-2 at 24.] The receptionist position included none of these duties, and entailed largely answering the phone and greeting visitors. [Filing No. 57-3 at 81-83.] A jury could certainly conclude that these two positions did not involve substantially similar duties and responsibilities. Therefore, summary judgment on this basis is inappropriate.

*c. Right to reinstatement*

Mr. Carnahan also moves for summary judgment on the basis that Ms. Feagans did not have the right to reinstatement, because she would have been fired or reassigned had she not taken leave. Mr. Carnahan contends that while Ms. Feagans was on leave, prosecutor's office staff brought to his attention multiple instances of errors made by Ms. Feagans in calculating child support obligations. [Filing No. 57-3 at 124-26; Filing No. 57-6.] Ms. Feagans, on the other hand, produced evidence that she had worked in the prosecutor's office as the child support administrator

advocacy. *See Malin v. Hospira*, 762 F.3d 552, 564 (7th Cir. 2014) (noting of ineffective summary judgment practices that "[r]isking such pitfalls in the hope of avoiding trial is a dramatic miscalculation of the risks and rewards of each approach").

for 26 years under five different prosecutors; that she had never received any disciplinary action; and that finding and correcting errors was a fairly routine occurrence among the child support staff. [Filing No. 57-2 at 1; Filing No. 57-2 at 10-12; Filing No. 57-2 at 34-36.] Mr. Carnahan also testified that he had no intention of permanently assigning Ms. Steele to the administrator position, and that he intentionally reinstated Ms. Feagans to it. [Filing No. 57-3 at 130.] Mr. Carnahan presents no evidence of negative performance evaluations or other personnel records indicating that Ms. Feagans was ever notified of any performance deficiencies. In addition, Mr. Carnahan had not yet worked with Ms. Feagans before she returned from leave, so he had no firsthand knowledge of her performance. Given these facts, and the scant evidence provided in support of Mr. Carnahan's contention that he would have fired or reassigned Ms. Feagans, a jury could conclude that Ms. Feagans would not have been reassigned to the receptionist position had she not taken FMLA leave.

In short, the parties have presented differing factual accounts of Ms. Feagans' restoration to the administrator position and reassignment to the receptionist position, either of which a jury could credit. Evidence in the record supports both sides, and therefore genuine issues of material fact exist as to this claim.

The Court therefore denies summary judgment to both Mr. Carnahan and Ms. Feagans on the FMLA interference claim.

*2. Retaliation Claim: Reassignment to Receptionist Position*

Ms. Feagans alleges that Mr. Carnahan retaliated against her for having taken FMLA leave by reassigning her to the receptionist position. The FMLA prohibits an employer from retaliating against an employee who exercised rights protected by the Act. *See Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 741 (7th Cir. 2008). It is "unlawful for any employer to discharge or in any other manner

discriminate against an individual for opposing any practice made unlawful by this subchapter," and to discharge or discriminate against a person for taking part in proceedings or inquiries under the FMLA. 29 U.S.C. § 2615(a)(2). The Seventh Circuit has construed these provisions as stating a cause of action for retaliation. *See, e.g.*, *Lewis,* 523 F.3d at 741; *Kauffman v. Federal Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).

Retaliation and interference claims differ in that a retaliation claim "requires proof of discriminatory intent while an interference [claim] requires only proof that the employer denied the employee his or her entitlements under the Act." *Goelzer,* 604 F.3d at 995. Ms. Feagans need not prove that "retaliation was the *only* reason for her termination; she may establish an FMLA retaliation claim by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Id.* (citations and internal quotations omitted). As instructed in *Ortiz*, the Court evaluates all proffered evidence "as a whole." *Ortiz,* 834 F.3d at 763.

Ms. Feagans proceeds under the direct method of proof, under which she must "present evidence that her employer took a materially adverse action against her because of her protected activity." *Goelzer,* 604 F.3d at 995. If her evidence is contradicted, "the case must proceed to trial unless the employer presents unrebutted evidence that it would have taken the adverse action against the plaintiff even if it did not have a retaliatory motive." *Id.* That is, "the plaintiff survives summary judgment by creating a triable issue of whether the adverse employment action of which she complains had a discriminatory motivation." *Id.* at 995-96 (citations and internal quotations omitted).

The evidence supporting Ms. Feagans' retaliation claim largely overlaps with the evidence supporting her interference claim. Ms. Feagans points to Mr. Carnahan's communications while she was on leave, which discuss keeping Ms. Steele in the administrator position; the suspicious

timing of her reassignment; and the fact that she suffered an adverse employment action when reassigned to the role of receptionist, where her responsibilities were significantly diminished. Mr. Carnahan responds by asserting that he would have taken the adverse action against Ms. Feagans even without a retaliatory motive. Mr. Carnahan claims that Ms. Feagans was not meeting her employer's legitimate expectations prior to taking leave, and he points to the emails sent by Ms. Steele, documenting errors that staff members found in Ms. Feagans' child support obligation calculations. [Filing No. 57-3 at 124-26; Filing No. 57-6.] Mr. Carnahan's claim, however, is not unrebutted. Ms. Feagans points to evidence that in 26 years at the prosecutor's office, she had never received a disciplinary action. [Filing No. 57-2 at 36.] She also provides evidence that error correction was routine in the child support division. [Filing No. 57-2 at 34.] And Mr. Carnahan testified that he did not intend to permanently assign Ms. Steele to the administrator position, and that he intentionally reinstated Ms. Feagans to it. [Filing No. 57-3 at 130.]

As with the interference claim, there is a genuine dispute of material fact regarding whether Ms. Feagans suffered an adverse employment action based on a discriminatory motive. Therefore summary judgment is denied.

**C. Indiana Wage Claims Act**

Between March 17 and May 1, 2015, when Ms. Feagans worked as the office receptionist, she completed and submitted weekly time cards indicating her hours worked. [Filing No. 52-2.] Ms. Feagans typically reported to work between 7:00 a.m. and 7:15 a.m., left at 4:00 p.m., and took a one-hour (unpaid) lunch break. [Filing No. 52-1; Filing No. 52-2.] This amounts to approximately 40 hours per week of work. Ms. Feagans' pay stubs during that period typically reflect payment for fewer hours than Ms. Feagans indicated on her time sheets. [Filing No. 52-2; Filing No. 52-1.] Her pay stubs indicate payment for 35 hours of work per week. [Filing No.

52-2; Filing No. 52-1.] By Ms. Feagans' calculation, she is due compensation for approximately 28 unpaid hours of work. [Filing No. 71 at 17.]

Ms. Feagans alleges that these unpaid wages constitute a violation of the IWCA, in that her employer was obligated to compensate her for all hours worked and reported. Mr. Carnahan raises two arguments in response to Ms. Feagans' claim: (1) that the compensation sought by Ms. Feagans does not qualify as a compensable "wage" under the IWCA; and (2) that Ms. Feagans has failed to bring her claim against all proper and necessary parties. Ms. Feagans moves for partial summary judgment on only the question of liability for unpaid wages under the IWCA. Mr. Carnahan cross-moves for summary judgment on both liability and damages. For the reasons that follow, the Court grants Ms. Feagans' motion for partial summary judgment, on the issue of liability only, and denies Mr. Carnahan's cross-motion for summary judgment.

Because Ms. Feagans was involuntarily terminated from her employment, Indiana Code Section 22-2-9-2 governs her claims related to unpaid wages. Subsection (a) provides that "[w]henever any employer separates any employee from the payroll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred…" I.C. § 22-2-9-2. The Code specifies that "'employer' means and includes every person, firm, partnership, association, corporation, limited liability company, receiver, or other officer of any court of this state, and any agent or officer of any of the above mentioned classes, employing any person in the state." I.C. § 22-2-9-1(a). Wages are defined as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." I.C. § 22-2-9-1(b). If an employer fails to pay wages due under, it "shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to

him remains unpaid ten percent (10%) of the amount due to him in addition thereto." I.C. § 22-2-9-2.[5] Section 22-2-9-4 requires plaintiffs to exhaust administrative remedies prior to filing suit, which Ms. Feagans has done by receiving a right to sue letter from the Attorney General of Indiana. [Filing No. 52-6.]

Mr. Carnahan does not dispute the hours reflected on Ms. Feagans' time cards, or the payment indicated on her pay stubs.[6] He argues instead that Ms. Feagans is not owed compensation for more than 35 hours per week, the number of hours she was approved to work, either because those hours constitute unauthorized overtime or "volunteer" activity.

The Court disagrees. Under Indiana law, "overtime compensation" is compensation for work in excess of 40 hours per week. *See* I.C. § 22-2-2-4(k) ("except as otherwise provided in this section, no employer shall employ any employee for a work week longer than forty (40) hours unless the employee receives compensation in excess of the hours above specified at a rate not less than one and one-half (1.5) times the regular rate at which the employee is employed"); *see also*, I.C. § 22-2-2-4(l)(1) ("'Overtime compensation' means the compensation required by subsection (k)"). Only 30 minutes of the 28 hours for which Ms. Feagans seeks compensation appear to reflect hours worked in excess of 40 hours per week. The hours Ms. Feagans worked that were not in excess of 40 hours per week cannot be classified as "overtime".

The Court also rejects Mr. Carnahan's argument that Ms. Feagans "volunteered" her time, and therefore is not entitled to payment. Mr. Carnahan cites *Sheaff Brock Inv. Advisors, LLC v.*

---

[5] Ms. Feagans was terminated prior to the recent amendment to Indiana Code Section 22-2-5-2, which became effective on July 1, 2015. The parties do not dispute that the pre-July 1 version of the statute applies.

[6] Because the Court only decides the question of liability here, it need not calculate the precise number of uncompensated hours. Ms. Feagans alleges that in discovery, she requested time cards for her final week of employment and has not yet received them. The number of hours and amount of liability will be subjects of proof at trial.

*Morton*, 7 N.E.3d 278, 287 (Ind. 2014), for the proposition that in order to constitute compensable work, the time claimed by the employee must be mandatory. [Filing No. 58 at 48.] However, Mr. Carnahan misapprehends the Indiana Supreme Court's holding in that case. It did not opine on whether an employee's time must be mandatory in order to be compensable; instead, the discussion concerned whether a type of compensation was "mandatory," thus weighing in favor of being considered a "wage" under the statute. *See Sheaff Brock*, 7 N.E.3d at 287 (holding "[w]e agree with the trial court and hold that, in light of all of the designated evidence in this case, Morton's additional compensation was a wage for purposes of the Wage Claims Act. The *additional compensation* was connected to Morton's work, *was mandatory*, was not tied to Sheaff Brock's financial success, could be calculated to a sum certain at the end of the quarter, and could be paid regularly within ten days of that calculation." (emphasis added)). Ms. Feagans requested payment for her hours worked, as evidenced through her time cards. She submitted those time cards to her supervisors, and Mr. Carnahan alleges no facts suggesting that he was not aware of Ms. Feagans' hours, or that he ever instructed her to alter her workday. Those hours constitute "labor or services rendered" under Indiana Code Section 22-2-9-1(b).

Finally, Mr. Carnahan's argument that Ms. Feagans has failed to bring her claim against the Knox County Council as a proper and necessary party is unavailing. That the County Council has the ability to appropriate funds to the prosecutor's office is immaterial to Ms. Feagans' claim. As the elected prosecutor, Mr. Carnahan has authority to spend appropriated funds. Accordingly, Ms. Feagans can collect any judgment against Mr. Carnahan, and he is her employer under the IWCA. *See* I.C. § 22-2-9-1(a).

For these reasons, the Court grants Ms. Feagans' Motion for Partial Summary Judgment, only as to the issue of liability on the IWCA claim. The amount of damages will be determined through later proceedings.

## IV.
## CONCLUSION

For the foregoing reasons, the Court:

- **DENIES** Defendant's Motion for Summary Judgment as to claims of discrimination based on age in violation of the ADEA, 42 U.S.C. § 1983, and the Equal Protection Clause, [Filing No. 56];
- **DENIES** Defendant's Motion for Summary Judgment as to all claims regarding violation of the FMLA, [Filing No. 56];
- **DENIES** Plaintiff's Motion for Summary Judgment as to claim regarding interference with the exercise of rights under the FMLA, [Filing No. 51];
- **DENIES** Defendant's Motion for Summary Judgment as to claims regarding violation of the IWCA, [Filing No. 56];
- **GRANTS** Plaintiff's Motion for Partial Summary Judgment, only as to liability regarding violation of the IWCA, [Filing No. 51].

The Court requests that the Magistrate Judge confer with the parties to address the possibility of an agreed resolution, or to establish a schedule for trial.

12/13/2016

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**